IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

| | | |
|---|---|---|
| TARUN KUMAR VYAS, | ) | |
| Plaintiff, | ) | Civil Case No. 7:23-cv-00189 |
| | ) | |
| v. | ) | |
| | ) | |
| 26TH DISTRICT JUVENILE AND | ) | |
| DOMESTIC RELATIONS COURT | ) | By: Elizabeth K. Dillon |
| FOR CITY OF HARRISONBURG | ) | United States District Judge |
| AND COUNTY OF ROCKINGHAM, *et al.*, | ) | |
| Defendants. | ) | |

**MEMORANDUM OPINION**

Tarun Kuman Vyas, a Virginia inmate proceeding *pro se*, has filed a complaint under 42

U.S.C. § 1983, naming the court and the judge involved in his child custody proceedings, as well

as the City of Harrisonburg and County of Rockingham.[1]  The case is before the court for review

pursuant to 28 U.S.C. § 1915A(a).  For the reasons set forth herein, the court concludes that

Vyas's complaint must be dismissed in its entirety.

## I.  BACKGROUND

Vyas's complaint challenges certain aspects of a July 13, 2021 order, which prohibits him

from accessing his minor children's school and medical records, prohibits him from removing

his minor children from the state or the country, and requires that his visits with his children be

supervised.  He also complains that he has been limited in contact with his children, that he has

not received any letters from them while incarcerated, and that he has not been able to speak with

his children even once since November 2020.

His complaint also spends a good deal of time comparing himself to another

---

[1] In a separate case filed in this court, Vyas sued the lawyers and guardian ad litem involved in the same custody proceedings.  *See Vyas v. Sofinski*, No. 7:23-cv-00075.

"immigrant"—who Vyas appears to view as a less worthy parent.  Vyas complains that he was treated differently and worse than this immigrant, who is permitted daily telephone contact with his children and unsupervised visits every other week.

Vyas complains that "it is evident . . . that while [he] has been subject to strict supervision just because he may have sent a couple of texts years ago, another immigrant has been shown so much leniency that an independent observer may wonder whether there is any rule of law in Rockingham County."  (Compl. 11.)  He further claims that the court's order—which was "the last word"—reflects a municipal policy because the court is sufficiently high up in the municipal hierarchy.  (*Id.*)

His complaint sets forth twenty-three different legal claims.  By way of example only, they include violations of the Due Process Clause under the Fifth and Fourteenth Amendments; violations of the Equal Protection Clause of the Fourteenth Amendment, violations of his parental rights and right to association under the Fifth, Fourteenth, Ninth and First Amendments, racial discrimination in violation of 42 U.S.C. § 1981, other types of discrimination, disparate treatment, harassment and retaliation in violation of Title VII of the Civil Rights Act of 1964, and the "Virginia Human Rights law," as well as additional state-law claims.  (*Id.* at 15–18 (setting forth all of his legal claims).)

For relief, Vyas asks for various injunctive and declaratory relief, as well as nominal, compensatory, and punitive damages.  The injunctive relief includes requests such as "preclud[ing] the juvenile and domestic relations court from exercising jurisdiction over any issue involving" Vyas, granting Vyas access to his children's medical and educational records, ordering that Vyas be given at least a 30-minute call with his children each week, and ordering a

weekly video call for his mother to see the children and confirm that they are well.  (Compl. 19–21.)

## II.  DISCUSSION

Under 28 U.S.C. § 1915A(a), the court must conduct an initial review of a "complaint in a civil action in which a prisoner seeks redress from a governmental entity or officer or employee of a governmental entity."  *See also* 28 U.S.C. § 1915(e)(2)(B) (requiring court, in a case where a plaintiff is proceeding *in forma pauperis*, to dismiss the case if it is frivolous or fails to state a claim on which relief may be granted).  Pleadings of self-represented litigants are given a liberal construction and held to a less stringent standard than formal pleadings drafted by lawyers. *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (per curiam).  Liberal construction does not mean, however, that the court can ignore a clear failure in pleadings to allege facts setting forth a claim cognizable in a federal district court.  *See Weller v. Dep't of Social Servs.*, 901 F.2d 387, 391 (4th Cir. 1990).  "To state a claim under § 1983[,] a plaintiff must allege the violation of a right secured by the Constitution and laws of the United States, and must show that the alleged deprivation was committed by a person acting under color of state law."  *Loftus v. Bobzien*, 848 F.3d 278, 284–85 (4th Cir. 2017) (internal quotation marks omitted).

As an initial matter, and assuming the court has jurisdiction, the court believes it is appropriate to decline to exercise jurisdiction over all of Vyas's claims that challenge or seek to modify the custody order issued by the state court.[2]  Vyas's complaint, although couched as a

---

[2]  The question of whether the court has jurisdiction depends, in part, on whether the "domestic-relations exception" to jurisdiction applies where, as here, jurisdiction is premised on a federal question.  The answer is unclear in the Fourth Circuit.  The Fourth Circuit has stated, albeit arguably in dicta, that the domestic relations exception "is applied only as a judicially implied limitation on the diversity jurisdiction; it has no generally recognized application as a limitation on federal question jurisdiction."  *United States v. Johnson*, 114 F.3d 476, 481 (4th Cir. 1997); *see also Johnson v. Byrd*, No. 1:16CV1052, 2016 WL 6839410, at *12 (M.D.N.C. Nov. 21, 2016) (making the case for why the statement was dicta).  The Fourth Circuit more recently cited to that same dicta from the *Johnson* decision, but that was in an unpublished, non-precedential decision.  *Reale v. Wake Cnty. Human Servs.*, 480 F. App'x 195 (4th Cir. 2012) (citing *Johnson*).  Accordingly, whether the exception has applicability in

§ 1983 action, is effectively challenging the state court's child custody determination and seeking injunctive relief in the form of a court order requiring that the custody arrangements be modified. Federal courts frequently refrain from ruling in cases directly concerning domestic issues such as child custody, whether that is the result of application of the "domestic relations exception to federal jurisdiction," some type of abstention, [or] the *Rooker-Feldman* doctrine. *See Ankenbrandt v. Richards*, 504 U.S. 689, 704 (1992) (concluding federal jurisdiction was appropriate over tort claims brought against parent with custody, and explaining that the "domestic relations exception encompasses only cases involving the issuance of a divorce, alimony, or child custody decree"); *id.* at 705–06 (explaining that abstention under *Burford v. Sun Oil Co.*, 319 U.S. 315 (1943), "might be relevant in a case involving elements of the domestic relationship even when the parties do not seek divorce, alimony, or child custody" if the case "presents difficult questions of state law bearing on policy problems of substantial public import whose importance transcends the result in the case then at bar").

Assuming that the domestic relations doctrine is not strictly applicable in federal-question cases, and thus that the court technically has jurisdiction, the court finds it appropriate to abstain from exercising jurisdiction over any claims seeking to modify the injunction order. *See Doe v. Doe*, 660 F.2d 101, 105–06 (4th Cir. 1981) (reasoning that while jurisdiction arguably may exist because the case was brought under the federal habeas statute, "the district court clearly erred by exercising any jurisdiction it might have had" in what was essentially a child custody dispute).

Although couched as constitutional violations, Vyas's claims are really objections to the

_____

federal-question cases arguably remains an open question in this circuit. *See Johnson*, 2016 WL 6839410, at *12– *13 (discussing subject at length). Other circuits are split. *See Deem v. DiMella-Deem*, 941 F.3d 618, 623 (2d Cir. 2018) (concluding that the exception applies and precludes jurisdiction only in cases where jurisdiction is premised on diversity, but noting that the Seventh Circuit has held it applies to both federal-question and diversity suits) (citing *Kowalski v. Boliker*, 893 F.3d 987, 995 (7th Cir. 2018)).

custody orders resulting from his children's custody proceedings and to the evidence introduced against him during those proceedings.  Relying on *Doe*, district courts within the Fourth Circuit have refused to address similar issues in other cases.  *E.g.*, *Roe v. Jenkins*, No. 1:20-CV-140, 2021 WL 1026524, at *3 (N.D.W. Va. Mar. 17, 2021) ("A court's determination of whether the Plaintiff or Defendant is entitled to child custody, care, and control is a custodial matter between private parties, a matter in which "the federal courts [do] not intervene." (quoting *Doe*, 660 F.2d at 106)).  *Accord Deem*, 941 F.3d at 621–22 (concluding that the "domestic relations *abstention* doctrine"—not the jurisdictional exception—applies in federal-question cases and the district court properly abstained from hearing the plaintiff's claims, which included a father's § 1983 claim that persons involved in the family court proceedings violated his First Amendment right to association with this children).  Consistent with this authority, the court concludes that it should abstain from deciding most, if not all, of the claims raised by Vyas, as they directly implicate the state court's custody determinations.

The court further concludes that it is barred from considering Vyas's claims pursuant to the *Rooker-Feldman* doctrine.[3]  *Exxon Mobil Corp. v. Saudi Basic Indus. Corp.*, 544 U.S. 280, 284 (2005) (holding that under the *Rooker-Feldman* doctrine, federal districts courts do not have subject matter jurisdiction to hear "cases brought by state-court losers complaining of injuries caused by state-court judgments rendered before the district court proceedings commenced and inviting district court review and rejection of those judgments").  Other courts, including the Fourth Circuit and district courts within it, have concluded that the *Rooker-Feldman* doctrine would bar a federal court's consideration of claims like Vyas's.  *Stratton v. Mecklenburg Cnty. Dep't of Soc. Servs.*, 521 F. App'x 278, 291 (4th Cir. 2013) (holding that, because the plaintiff's

---

[3]  The doctrine is based on *District of Columbia Court of Appeals v. Feldman*, 460 U.S. 462 (1983) and *Rooker v. Fidelity Trust Co.*, 263 U.S. 413 (1923).

"due process claim is a mere pretext for the real focus of the [c]omplaint, which challenges the validity of records and proceedings of the North Carolina courts that resulted in the termination of the [plaintiff's] parental rights," the *Rooker-Feldman* doctrine bars consideration of that claim); *Johnson v. Byrd*, No. 1:16CV1052, 2016 WL 6839410, at *7 (M.D.N.C. Nov. 21, 2016), *aff'd*, 693 F. App'x 219 (4th Cir. 2017); *Davis v. Singer*, No. 4:13cv7, 2014 WL 12598862 (E.D. Va. Aug. 5, 2014) (concluding that the *Rooker-Feldman* doctrine precluded consideration of plaintiff's civil rights complaint, which effectively challenged the termination of his parental rights, and explaining that "a plaintiff may not seek a reversal of a state court judgment simply by recasting his complaint in the form a civil rights action pursuant to 42 U.S.C. § 1983") (quotation and citation omitted); *Powell v. Williams*, No. 5:14-CV-282, 2014 WL 3809964, at *3 (E.D.N.C. July 14, 2014) (holding that, "to the extent such [child custody or child support] matters have been determined by the state court, this court is . . . barred by the *Rooker–Feldman* doctrine from reviewing the state court's decisions").

Vyas seeks to challenge the terms of custody over his children, the limitations placed on his visits and contact with them, and his access to their records. Thus, he is effectively seeking a re-determination of issues already determined by the state court, which the *Rooker-Feldman* doctrine prohibits.

For all of the foregoing reasons, the court will abstain from exercising its jurisdiction, and further concludes that the *Rooker-Feldman* doctrine bars consideration of Vyas's claims.

## B.  Failure to State A Claim

To the extent any of Vyas's claims are not barred by the doctrines discussed above, Vyas's claims against all of these defendants fail to state a claim or are brought against immune defendants. Thus, they are subject to dismissal on this ground, as well. First of all, Vyas names

Judge Drown as a defendant, but any claims against Judge Drown fail because judges are entitled to absolute judicial immunity. Judicial immunity clothes judges with absolute immunity from liability in damages for their judicial or adjudicatory acts. *Forrester v. White*, 484 U.S. 219, 225–26 (1988). Judicial immunity is an absolute defense, not merely to liability or damages, but a defense to suit under 42 U.S.C. § 1983. *Mireles v. Waco*, 502 U.S. 9, 11 (1991).

There are two possible exceptions to judicial immunity. Specifically, it does not shield a judge for (1) non-judicial acts; or (2) acts taken in the clear absence of all jurisdiction. *Mireles v. Waco*, 502 U.S. 9, 11–12 (1991). Neither exception applies here. The actions that Vyas challenges are judicial decisions by Judge Drown in the context of custody proceedings. They thus were judicial acts because they were "function[s] normally performed by a judge" and Vyas "dealt with the judge in his judicial capacity." *Mireles*, 502 U.S. at 12 (citing *Stump v. Sparkman*, 435 U.S. 349, 360 (1978) as identifying these two factors used to determine whether an act is a judicial one). Vyas does not allege that Judge Drown lacked jurisdiction to rule, either, so the second exception does not apply. Accordingly, Judge Drown is entitled to judicial immunity, and the claims against him fail.

The court also finds no merit in Vyas's contention that either the state court itself or the City of Harrisonburg or County of Rockingham can be held liable as a defendant under § 1983 based on a judicial decision of a judge. First, as to the court, "[i]t is well settled that a state court is not a 'person' subject to suit under § 1983." *Bradley v. Virginia*, No. 7:19-CV-00253, 2019 WL 1460921, at *2 (W.D. Va. April 2, 2019) (citations omitted); *see also Best v. Vill. of Ellenville*, No. 4:20-CV-00038-BO, 2020 WL 2499601, at *3 (E.D.N.C. Apr. 1, 2020) (collecting authority holding same), *report & recommendation adopted sub nom. Best v. Vill. of*

*Ellenville & Ellenville Just. Ct.*, No. 4:20-CV-38-BO, 2020 WL 2497705 (E.D.N.C. May 14, 2020).

As to the localities, Vyas seeks to impose liability under *Monell v. v. Dep't of Soc. Servs. of N.Y.C.*, 436 U.S. 658 (1978).  The *Monell* Court made clear that local governing bodies . . . "can be sued directly under § 1983 for monetary, declaratory, or injunctive relief where . . . the action that is alleged to be unconstitutional implements or executes a policy statement, ordinance, regulation, or decision officially adopted and promulgated by that body's officers." *Monell*, 436 U.S. at 690.  Under *Monell*, a governmental entity is liable under § 1983 only when the entity's official policy or custom played a part in the alleged violation of federal law. *Oklahoma City v. Tuttle*, 471 U.S. 808, 817–18 (1985).

Vyas alleges that the court's decision constitutes municipal policy for purposes of *Monell* liability, but he is incorrect.  In limited circumstances, a non-judicial act by a judge can subject a municipality to potential *Monell* liability.  *See, e.g.*, *Williams v. Butler*, 863 F.2d 1398, 1402 (8th Cir. 1988) (holding that city could be held liable for municipal judge's decision to fire a court clerk because he had been delegated carte balance authority regarding employment matters in his court).  But when acting as a judicial officer, as Judge Drown did here, he is not a policymaker for any municipality.  *Ledbetter v. City of Topeka*, 318 F.3d 1183, 1190 (10th Cir. 2003) (holding judicial decision in a particular case is not an "official policy or custom," so as to impose liability under *Monell* and collecting authority holding same); *King v. City of Crestwood*, 899 F.3d 643, 649–50 (8th Cir. 2018) (explaining that a judicial order was not a final policy decision that could create municipal liability under § 1983, in part because it was appealable).  Thus, Vyas's claims against the other defendants also fail.  All of his claims are thus subject to dismissal for failure to state a claim.

Lastly, the court will decline to exercise jurisdiction over any remaining state-law claims in the complaint.  *See* 28 U.S.C. § 1367(c)(3).

### III.  CONCLUSION

For the foregoing reasons, Vyas's complaint will be dismissed in its entirety.  An appropriate order will be entered.

Entered: May 19, 2023.

*/s/ Elizabeth K. Dillon*

Elizabeth K. Dillon
United States District Judge